UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

G&L Plumbing, Inc.

    Plaintiff,

       v.

Matthew Kibbe, Nicole Tinsley Lineen,
M. Kibbe Plumbing & Heating

    Defendants.

Matthew Kibbe

    Counterclaim Plaintiff,

       v.

G&L Plumbing, Inc.

    Counterclaim Defendant.

Civil Action No.
23-40056-MRG

MEMORANDUM OF DECISION ON G&L'S
MOTION FOR A PRELIMINARY INJUNCTION

**INTRODUCTION**

Plaintiff and Counterclaim Defendant G&L Plumbing, Inc. ("G&L") is a Massachusetts-based plumbing company.  G&L brought this suit against the three (3) Defendants[1] after discovering that one of its employees -- Defendant Matthew Kibbe ("Mr. Kibbe") -- was allegedly leading a scheme to construct a competing plumbing business whose cornerstone was G&L's purported trade secrets.

---

[1] (1) Defendant and Counterclaim Plaintiff Matthew Kibbe; (2) Defendant Nicole Tinsley Lineen, and (3) Defendant M. Kibbe Plumbing and Heating (collectively, the "Defendants").

According to G&L, Mr. Kibbe had, among other things, surreptitiously transferred key pieces of G&L confidential business information to his personal devices and to Defendant Nicole Tinsley Lineen ("Ms. Tinsley Lineen") and had also secretly encouraged some existing G&L customers to patronize his newly formed competing venture, Defendant M. Kibbe Plumbing and Heating.  Further, G&L contends that after Mr. Kibbe's firing, the unfair competition persisted as the Defendants continued to exploit the wrongfully obtained G&L confidential business information.

On June 12, 2023, G&L filed a motion seeking a preliminary injunction [ECF No. 10] and the Defendants later opposed it.  [ECF No. 13].  On July 12, 2023, the Court held an in-person motion hearing.  [ECF No. 17].  At the hearing, the parties worked to narrow the scope of the proposed injunctive relief and the Court ordered the entrance of a narrowly tailored preliminary injunction that went into effect that day.[2]

For the reasons stated at the hearing and in this Memorandum, G&L's preliminary injunction motion [ECF No. 10] is **<u>GRANTED IN PART</u>**.  For the avoidance of any doubt about the restrictions imposed on the Defendants, the oral order that went into effect on July 12, 2023, has been memorialized in the written Order that the Court issued on September 20, 2023.  [ECF No. 18].

---

[2] [ECF No. 17] (Tr.) at 27:11-13 (The Court (to Defense counsel): "You're going to let your client know that a preliminary injunction is in place as of now.")

## BACKGROUND

The record, including the documentary evidence submitted by the parties, supports the following facts.

### I.   Factual Background

#### A.  G&L

G&L is a contractor that specializes in commercial and residential plumbing and drain services.  [ECF No. 10 at 2].  G&L was incorporated in 1973 and its principal office is in Boylston, Massachusetts.   [ECF No. 1 at ¶¶ 1,7].  G&L has over twenty (20) employees and these consist of office staff, estimators, plumbers, and apprentices.  Id. at ¶9.  G&L alleges that it operates within a "highly competitive" market.  Id. at ¶10.

#### B.  G&L's Alleged Trade Secrets

G&L contends that it possesses protectable trade secrets and has provided a lengthy list of those things that it considers as such.  Id. at ¶12.  However, the Court's review has revealed that two (2) species of alleged G&L trade secrets are, at this early stage,[3] most directly at issue: (1) certain G&L's pricing projection and estimating formulas that were contained in Microsoft Excel spreadsheets, and (2) certain pieces of internal, G&L customer and potential customer contact information.  See e.g., [ECF No. 10 at 7].  G&L highlights that it has invested significant time -- nearly fifty (50) years -- and resources into developing its business and building customer goodwill.  According to G&L, its commercial success

---

[3] The Court notes that G&L has stated that its investigation into Mr. Kibbe's alleged misdeeds while he was still a G&L employee remains ongoing.

depends on its ability to protect and exclusively use its purportedly trade secret information. <u>Id.</u> at 2. G&L has identified numerous steps it has taken to protect this information, including "password protect[ing]" its computer systems and limiting the scope of internal access to this information. <u>Id.</u> at 9. G&L also alleges that it requires user credentials, encryption and access restrictions, authentication procedures, and the locking of workstations. <u>Id.</u> Although it is not clear whether G&L requires any of its employees to sign confidentiality agreements, it is undisputed that G&L did <u>not</u> require Mr. Kibbe to sign one during his tenure with the company. <u>Id.</u>

### C. Mr. Kibbe's Employment at G&L

In 2006, G&L hired Mr. Kibbe as an "Apprentice Plumber." [ECF No. 1 at ¶16]. Under G&L's tutelage, Mr. Kibbe became a licensed plumber in 2007 and he was eventually promoted to "Estimator/Foreman" in 2016. <u>Id.</u> at ¶18. In his role as an "Estimator," Mr. Kibbe was tasked with preparing estimates (i.e., "bids") for customers and prospects. <u>Id.</u> This position required exposure to several forms of G&L's allegedly trade secret-containing information -- including, for example, "the names and contact information of customers and potential customers, G&L's methods for creating estimates/bids for projects for customers and potential customers, G&L's calculations for charging for time spent and materials used in jobs for customers, and information regarding G&L's business strategies and vendor relationships." <u>Id.</u> at ¶20. Mr. Kibbe was also given a company vehicle, a company laptop, a company smart phone, and a company e-mail account. <u>Id.</u> at ¶21. Shortly

after learning of Mr. Kibbe's allegedly wrongful conduct (described below) G&L terminated Mr. Kibbe's employment in April 2023.  [ECF No. 10 at 4].

### D.  Ms. Tinsley Lineen and M. Kibbe Plumbing and Heating

Ms. Tinsley Lineen is Mr. Kibbe's partner and is allegedly an employee of a G&L materials supplier.  [ECF No. 1 at ¶26].  Ms. Tinsley Lineen recently gave birth to her and Mr. Kibbe's child.  [ECF No. 7 at ¶7].

M. Kibbe Plumbing and Heating is allegedly a corporate entity that Mr. Kibbe and Ms. Tinsley Lineen sought to establish in 2023.  In the course of its internal investigation, G&L found a Sturbridge, Massachusetts municipal business application for this corporate entity.  Mr. Kibbe was listed as the "Manager[]" and Ms. Tinsley Lineen was listed as the "Property Owner."  [ECF No. 10 at Ex. K].

### E.  The Defendants' Allegedly Wrongful Conduct

In early April 2023, a G&L materials supplier contacted G&L and advised that Mr. Kibbe had told that supplier that he was starting his own competing plumbing business and that he intended to steal G&L customers.[4]  Id. at 4.  G&L's subsequent internal investigation yielded a number of findings that tended to substantiate the material supplier's claims about Mr. Kibbe's actions and intentions.  Id.  Although the Court will not recite all of G&L's alleged findings (see id. at pp. 4-6), the company's relevant discoveries included:

---

[4] Although this allegation may be based on hearsay evidence, this Court may nevertheless properly consider it at the preliminary injunction stage.  See e.g., Asseo v. Pan American Grain Co., Inc., 805 F.2d 23, 26 (1st Cir. 1986) (explaining that courts may consider inadmissible evidence, including hearsay, when ruling on a motion for preliminary injunction, with the "dispositive question" being "whether, weighing all the attendant factors, including the need for expedition, this type of evidence was appropriate given the character and objectives of the injunctive proceeding.")

- On March 20, 2023, Mr. Kibbe allegedly communicated electronically with Ms. Tinsley Lineen and informed her that he had "[c]opied [G&L's] Excel formulas" and "[c]hecked [his] contacts."

- A "To Do" list belonging to Mr. Kibbe in which handwritten entries included, "[r]egister as a [b]usiness;" "[t]ransfer [c]ontacts over."

- A text message exchange between Mr. Kibbe and Ms. Tinsley Lineen in which Mr. Kibbe sent a picture of a man standing in an empty pool with the caption "Joe [Mr. Joseph Silk -- G&L's President] in the office circa July 2023."  In response, Ms. Tinsley Lineen sent back "laughing" emojiis.

- An invoice showing that while still employed at G&L, Mr. Kibbe had solicited and completed plumbing work for existing G&L customers on behalf of "Matt Kibbe['s Plumbing + Heating."  Allegedly, Mr. Kibbe received payment directly from G&L's customers for this work.

- Mr. Kibbe informing Ms. Tinsley Lineen that he had "double delete[d]" certain records that G&L suspects may have contained company information.

- A list -- handwritten by Mr. Kibbe -- of some twenty-eight (28) current G&L customers.  Id. at Ex. M.  Notably, one of the listed customers -- Auburn, Massachusetts' High School -- was referenced by Mr. Kibbe in a separate communication with Ms. Tinsley Lineen.  Id. at Ex. L.  There, Mr. Kibbe seemed to reference Auburn High School as one of his competing venture's customer targets.  Relatedly, G&L has learned that another G&L customer listed in Exhibit M -- Fairlawn Rehabilitation Hospital -- has also already been approached by Mr. Kibbe's competing venture.  Id. at 6.

### F.  Mr. Kibbe's Account(s)

When first confronted by a G&L executive about these findings, Mr. Kibbe allegedly tried to justify his conduct by saying that he wanted to make more money and that he did not want to be the G&L executive's age before he started making money.  [ECF No. 1 at ¶39].  Strikingly, however, Mr. Kibbe now contends in his filings that the copying/transmissions of company data to his personal devices was

actually an attempt to prepare himself to work remotely for G&L during a period of requested family leave.  [ECF No. 13 at 4].

## II.  Procedural History

This case began on May 8, 2023, when G&L filed its Verified Complaint [ECF No. 1] that asserted the following seven (7) causes of action:

| Count # | Cause of Action | Defendant(s) |
|---------|-----------------|--------------|
| I | **Violations of the Defend Trade Secrets Act** (18 U.S.C. § 1836(b)(1)) | Matthew Kibbe |
| II | **Violations of the Massachusetts Uniform Trade Secrets Act** (Mass. Gen. Laws ch. 93, §§ 42, *et. seq.*) | Matthew Kibbe |
| III | **Conversion** (under Massachusetts law) | All Defendants |
| IV | **Violation of the Computer Fraud and Abuse Act** (18 U.S.C. §§ 1030, 1030(a)(4)) | Matthew Kibbe |
| V | **Breach of the Duty of Loyalty** (under Massachusetts law) | Matthew Kibbe |
| VI | **Conspiracy** (under Massachusetts law) | Matthew Kibbe and Nicole Tinsley Lineen |
| VII | **Unfair/Deceptive Trade Practices** (Mass. Gen. Laws ch. 93A, § 11) | Matthew Kibbe and Kibbe Plumbing and Heating |

On May 23, 2023, Defendants filed their Answer [ECF No. 7] and Mr. Kibbe lodged a counterclaim against G&L for alleged violations of the Massachusetts Paid Family and Medical Leave Act.  [ECF No. 7 at 8].

On June 12, 2023, G&L filed this preliminary injunction motion [ECF No. 10]. Defendants filed an opposition on June 27, 2023 [ECF No. 13].  As noted above, this

Court then held an in-person hearing on the motion on July 12, 2023 [ECF No. 17] during which the Court ruled from the bench and ordered the immediate entrance of a narrowly-tailored preliminary injunction.

## DISCUSSION

### I.   Legal Standard

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." Munaf v. Geren, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction in this Court, G&L bears the burden to show: (1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest. NuVasive, Inc. v. Day, 954 F.3d 439, 443 (1st Cir. 2020) (citations omitted). Although each of these four (4) considerations is important, the most critical factor is the likelihood of success on the merits. Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9-10 (1st Cir. 2013) (explaining that likelihood of success is the "main bearing wall" of the preliminary injunction framework).

G&L's brief in support of its motion focused on just three (3) of its seven (7) causes of action: its (1) Defend Trade Secrets Act claim, its (2) Massachusetts Uniform Trade Secrets Act claim,[5] and its (3) conversion claim.[6] Therefore, the

---

[5] From this point forward, the Court will refer to these two (2) claims collectively as "the trade secrets claims."

[6] Although G&L did state in passing that its duty of loyalty claim also supported its preliminary injunction request, G&L did not substantively brief this particular issue.

Court will only apply the preliminary injunction factors to G&L's trade secrets and conversion claims.

## II.    Analysis

Given the great importance of the "likelihood of success" factor in the preliminary injunction analysis and the fact that the trade secrets claims and the conversion claim require G&L to prove different elements, the Court will address G&L's "likelihood of success" for each of the two categories of claims separately.  However, given the factual overlap underlying both categories of claims and to avoid redundancies, the Court will apply the remaining three (3) preliminary injunction factors to both the trade secrets claims and the conversion claim simultaneously.

### A1. Likelihood of Success – Trade Secrets Claims (Counts I & II)

G&L brings trade secrets misappropriation claims against Mr. Kibbe under the federal Defend Trade Secrets Act (the "DTSA"), 18 U.S.C. § 1836, and the Massachusetts Uniform Trade Secrets Act (the "MUTSA"), Mass. Gen. Laws c. 93, § 42.  To prevail under either statute, G&L must establish that (1) the information at issue constitutes a trade secret, (2) that G&L took reasonable measures to secure the confidentiality of the information, and (3) that the trade secrets were obtained through improper means.  See e.g., Parexel Int'l LLC v. Signant Health Holding Corp., 2023 U.S. Dist. LEXIS 64832, *22-23 (D. Mass. Apr. 13, 2023).  To prevail on its DTSA claim, G&L must prove an additional element -- namely that the trade secret-at-issue is "related to a product or service used in or intended to be used in interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).  This Court has recognized

that the "standard for misappropriation under the DTSA is substantially similar to that under Massachusetts law." See, e.g., Sensitech, Inc. v. LimeStone FZE, 581 F. Supp. 3d at 349 (D. Mass. 2021).

### i.   The Trade Secrets-at-Issue

As referenced above, two (2) particular types of alleged G&L trade secrets are presently at issue: (1) certain G&L's pricing projection and estimating formulas that were contained in Microsoft Excel spreadsheets, and (2) certain pieces of internal, G&L customer and potential customer contact information.  In this Circuit, a trade secret may consist of "any formula, pattern, device or compilation of information which is used in one's business, and which [provides] an opportunity to obtain an advantage over competitors who do not know or use it."  See e.g., Burten v. Milton Bradley Co., 763 F.2d 461, 463 (1st Cir. 1985).  Further, a trade secret "need not have the novelty that is requisite for a patent, it must only confer a competitive advantage on its possessor."  See e.g., TouchPoint Sols. Inc. v. Eastman Kodak Co., 345 F. Supp. 2d 23, 29 (D. Mass. Oct. 13, 2004).  The Massachusetts Supreme Judicial Court has provided six (6) factors that courts applying Massachusetts law should consider when determining whether a given piece of business information may constitute a protectable trade secret: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the

employer in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." Jet Spray Cooler, Inc. v. Crampton, 361 Mass. 835, 840 (1972).

G&L is reasonably likely to establish that its pricing projection and estimating formulas are trade secrets.  As a threshold matter, no party has offered any evidence or argument that this information was known outside of G&L's business.  In fact, G&L contends that it only exposed Mr. Kibbe to this information in his role as an Estimator.  Moreover, the pricing projection and estimating formulas are highly valuable to G&L because, for example, insider knowledge of them could allow competitors to unfairly outbid G&L and also to poach G&L customers in this highly competitive market.  The Court also notes that since G&L has spent about fifty (50) years building and cultivating their customer relationships, it follows that the pricing projection and estimation formulas could not be easily duplicated by those outside G&L.  For all of these reasons, G&L is reasonably likely to establish that this type of business information constitutes a trade secret.  See e.g., Protege Software Servs., Inc. v. Colameta, No. CIV. A. 09-03168, 2012 Mass. Super. LEXIS 190, *42-43 (Mass. Super. July 16, 2012) (concluding that, among other things, plaintiff's "financial information" and "pricing information" may constitute trade secrets); Bruno Int'l Ltd. v. Vicor Corp., 2015 U.S. Dist. LEXIS 123556, *40-41 (D. Mass. Sept. 16, 2015) (concluding that, among other things, "pricing information" could constitute trade secrets "where the information provides its holder with a competitive advantage").

G&L is also reasonably likely to establish that its internal customer and potential customer contact information is a trade secret. Some of the documentary evidence shows that Mr. Kibbe transferred specific customer representatives' phone numbers to himself. It was only through his work with G&L that Mr. Kibbe had access to information about key customer decision-makers and their contact information. This sort of business information is unquestionably valuable -- especially in a highly competitive market. Indeed, if it were not valuable, it is unlikely that Mr. Kibbe would have gone to such lengths to transfer this contact information from his G&L device to his personal device and to then apparently attempt to conceal his efforts to do so. Mr. Kibbe seems to have used this type of information already to target at least one (1) existing G&L customer, Fairlawn Rehabilitation Hospital. Accordingly, the Court finds that G&L is reasonably likely to establish that its internal customer and potential customer contact information constitutes a trade secrets. See e.g., KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC, 2021 U.S. Dist. LEXIS 132167 (D. Mass. Aug. 23, 2021) (explaining that, "[u]nder Massachusetts law, non-technical confidential information such as customer or supplier lists can qualify as a protected trade secret."); EMC Corp. v. Pure Storage, Inc., 2016 U.S. Dist. LEXIS 189511, *19-20 (D. Mass. Aug. 19, 2016) (collecting cases and listing "confidential customer-related information including customer lists and contact information" as types of information that are "routinely given trade secret protection.") (citations omitted).

ii.   **Reasonable Measures**

G&L must also show that it has taken reasonable measures to protect its alleged trade secrets.  There are four (4) factors relevant to this inquiry: (1) the existence or absence of a confidentiality agreement, (2) the nature and extent of precautions taken, (3) the circumstances under which the information was disclosed, and (4) the degree to which the information has been placed in the public domain or rendered readily ascertainable.  See e.g., Allstate Inc. Co. v. Fougere, 79 F.4th 172, 192 (1st Cir. 2023).

On balance, G&L is reasonably likely to establish that it took appropriate measures to protect both species of its alleged trade secrets.  G&L has acknowledged that it did not require Mr. Kibbe to sign a confidentiality agreement - - a fact that counts against G&L in their pursuit of a preliminary injunction. However, this fact is not fatal to G&L's pursuit of a preliminary injunction.  See e.g., JTH Tax, Inc. v. Gouneh, 721 F. Supp. 2d 132, 139 (N.D. NY 2010) (denying a motion to dismiss a trade secrets misappropriation claim on the grounds that plaintiff had not required defendant to sign a confidentiality agreement because, "the existence of an agreement is merely one of the grounds upon which [trade secret misappropriation] liability may be predicated.")  Moreover, the record reveals that G&L took a good number of meaningful steps to protect its alleged trade secrets.  For example, G&L "password protects" its computer systems and limits the scope of internal access to its alleged trade secrets.  G&L also requires user

credentials and employs encryption, access restrictions, role-based authority, authentication mechanisms, and the locking of workstations.

More fundamentally, it is uncontroverted at present that G&L's alleged trade secrets would exist outside of G&L but for Mr. Kibbe's surreptitious downloading, copying, and transmission of these materials to himself and Ms. Tinsley Lineen. Said differently, there is no suggestion that the alleged trade secrets exist elsewhere in the public domain. For all of these reasons, the Court finds that, on balance, G&L is reasonably likely to establish that it took reasonable measures to protect its alleged trade secrets.

### iii.    Improper Means

In addition to proving the existence of trade secrets and that it took reasonable measures to protect them, G&L must also show that Mr. Kibbe used improper means to obtain and disclose those G&L trade secrets. The MUTSA defines "improper means broadly to include the use or disclosure of another's trade secret if the recipient knew or had reason to know that the knowledge was derived from or through a person who had a duty to limit its use, disclosure, or acquisition. KPM Analytics, 2021 U.S. Dist. LEXIS 132167, *40 (D. Mass. Aug. 23, 2021). The DTSA "contains very similar language." Id.

Various examples from this still-developing factual record strongly indicate that Mr. Kibbe employed improper means to access and disclose both types of G&L's trade secrets. Mr. Kibbe allegedly sent and imported G&L customer contact information from his G&L-issued cell phone to his personal phone for Defendant M.

Kibbe Plumbing and Heating.  G&L has learned that Mr. Kibbe subsequently solicited one of the very customers (Fairlawn Rehabilitation Hospital) that he had included in his handwritten list of G&L customers on behalf.  The documentary evidence sheds great light on the intentions that drove Mr. Kibbe to take these and other actions.  See e.g., [ECF No. 10 at Ex. K] (Mr. Kibbe sending Ms. Tinsley Lineen a picture of a man standing in an empty pool with the caption "Joe [Mr. Joseph Silk -- G&L's President] in the office circa July 2023.")

Notwithstanding Defendants' assertion that these and other alleged actions were nothing more than "[Mr.] Kibbe setting himself up to be able to work from home [for G&L] during his PFML leave,"[7] this Court finds that G&L is reasonably likely to establish that Mr. Kibbe used improper means to obtain and disclose G&L's trade secrets.

### iv.   Interstate Commerce

As noted, to prevail on its DTSA claim, G&L must meet an additional, fourth element: it must show that its alleged trade secrets related to a product or service used in or intended to be used in interstate or foreign commerce.  18 U.S.C. § 1836(b)(1).  G&L has alleged as much,[8] and while Defendant "[d]enied" this allegation in its Answer [ECF No. 7], it has not otherwise called the sufficiency of G&L's interstate commerce allegation into question in any substantive way.  In addition to its substantively uncontested factual allegation, the Court notes that the documentary evidence attached to the Complaint also tends to show that the

---

[7] [ECF No. 13 at 4].
[8] [ECF No. 1 at ¶51].

interstate commerce element is reasonably likely to be met.  See e.g., ECF No. 1 at Ex. G (p. 15 -- Mr. Kibbe sending himself the name of an electric company whose phone number bears a Connecticut-based area code; p. 20 -- Mr. Kibbe importing contact information for an individual that purportedly works at G&L customer Price Chopper whose phone number bears a New York area code; p. 21 -- Mr. Kibbe importing contact information for an individual that purportedly works at Paxton Valves whose phone number bears a New York area code).  In light of G&L's allegation and the documentary evidence before it, the Court finds at this early juncture that G&L is reasonably likely to establish that its alleged trade secrets relate to products and/or services that are used in or intended to be used in interstate and/or foreign commerce.  See e.g., Blades of Green, Inc. v. Go Green Lawn & Pest, LLC, 598 F. Supp. 3d 348, 355 (D. Md. Apr. 18,  2022) (considering the DTSA interstate commerce element and recognizing that "courts routinely conclude that a plaintiff satisfies its pleading burden by alleging that it is engaged in national or international sales"); Phillips N. Am. LLC v. Hayes, 2020 U.S. Dist. LEXIS 164474, *27-28 (D. Md. Sept. 9, 2020) (rejecting Defendants' argument that the Plaintiff had failed to meet the DTSA jurisdictional element because, at the motion to dismiss stage, the Court could "easily infer" from Plaintiff's allegation its sales business was national and international that its purported trade secrets related to services used or intended for use in interstate and/or foreign commerce.)

### A2. Likelihood of Success – Conversion Claim (Count III)

G&L also brings a conversion claim against all of the Defendants.  The First Circuit has explained that to prevail on a conversion claim under Massachusetts law, the plaintiff must show that: (1) the Defendants intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the Defendants' conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused.  Evergreen Marine Corp. v. Six Consignments of Frozen Scallops, 4 F.3d 90, 95 (1st Cir. 1993).

As discussed at length above, G&L has submitted evidence tending to show that Mr. Kibbe has absconded with various pieces of company property and company information.  Although Mr. Kibbe had been given access to certain G&L confidential information for the limited purpose of performing his G&L job duties, he had no legal right to surreptitiously transfer that confidential information to himself and others for the purpose of exploiting it and using it to harm G&L.  There is ample evidence of the fact that these data transfers were done with wrongful intent.  For example, Mr. Kibbe allegedly sent various e-mails to Ms. Tinsley Lineen that contained certain of G&L's alleged trade secrets and, in one such instance, followed-up by sending her a text message that read "double delete complete" -- obviously a reference to efforts being made to cover their tracks.  [ECF No. 10 at 5].  So, G&L is reasonably likely to satisfy the first element of its conversion claim.

With respect to the second element, there can be no serious debate that G&L had an ownership interest in its confidential business information.  Indeed, it had been building customer relationships and honing and refining its pricing formulas and projection techniques for about fifty (50) years.  G&L also treated this confidential information as its own and took significant measures to protect it.  Accordingly, G&L is reasonably likely to satisfy the second element of its conversion claim.

Turning to the third and fourth elements, it is clear from the record that G&L has already been harmed by the Defendants conduct.  For example, Mr. Kibbe deprived G&L of some amount of revenue when he performed work for a G&L customer in the name of his competing entity.  Even assuming for the sake of argument that Mr. Kibbe had originally had some legal right to use G&L's property for the limited purpose of performing his job functions while he was an employee, his subsequent refusal to return/destroy his copies of G&L's purported trade secrets fatally undermines any argument that he presently has a valid right of possession over them.  See ECF No. 10 at 6 (G&L alleging that they have reason to believe that Mr. Kibbe defied their instruction to cease contacting G&L customers).

## B. Risk of Irreparable Harm

There is no question regarding the potential for irreparable harm to G&L in the absence of a preliminary injunction.  The alleged trade secrets constitute valuable information and customer insights that could permanently damage G&L's business if the Defendants and/or others were allowed to access and exploit them.  In any event, since G&L has demonstrated a likelihood of success on its trade secrets

claim, it is entitled to a presumption of irreparable harm as a matter of law.  See e.g., EchoMail, Inc. v. Am. Express Co., 378 F. Supp. 2d 1, 4 (D. Mass. Jul. 15, 2005).  The Defendants' alleged conversion of G&L property poses a risk of irreparable harm, also, especially given that G&L's market is a highly competitive one.  Accordingly, the Court finds that the risk of irreparable harm to G&L is sufficient to warrant the entry of a preliminary injunction.

## C. Public Interest

The Court further finds that consideration of the public interest heavily weighs in favor of imposing a preliminary injunction.  First, there is a federal policy and a policy of the Commonwealth of Massachusetts to offer strong protection for trade secrets.  See e.g., Boston Centerless, Inc. v. Desantis, 2022 U.S. Dist. LEXIS 199991, *3-4 (D. Mass. Nov. 2, 2022).   Moreover, several of the customers-at-issue in this case are public entities -- such as the Auburn, Massachusetts school system.  Without question, the public has an interest in their entities being able to engage in fair and transparent bidding processes.  If the Defendants were allowed to unfairly compete against G&L in such bidding contests, that public interest might be undermined.

With respect to the conversion claim, the Court notes that there is overlap between G&L's interest in regaining sole possession of its confidential business materials and the public interest.   The public has an interest in individuals and firms being able to develop gradual, trusting relationships with their vendors, such as their plumbing contractors.  Part of this process can involve the customer

deciding to reveal direct contact information and other sensitive details about their business to those that they come to trust.  This sort of trust must be earned and allowing the Defendants to simply exploit G&L's confidential information could have a chilling effect on customers' willingness to form those relationships.  For all of these reasons, the Court finds that the public interest counsels in favor of entering a preliminary injunction.

### D.  Balance of Equities

Lastly, the Court finds that the balance of equities weighs in favor of granting a preliminary injunction.  The potential harm that would flow to G&L in the absence of a preliminary injunction far outweighs the minimal hardship that the preliminary injunction will impose on the Defendants.  Notwithstanding the requirements of complying with the narrowly tailored preliminary injunction, the Defendants will be left largely free to build their fledgling business.  However, this Court will not permit the Defendants to build that business unfairly by targeting certain G&L customers pending a trial on the merits.

CONCLUSION

G&L has established a likelihood of success on the merits on its trade secrets claims and on its conversion claim.   G&L is likely to be irreparably harmed in the absence of a narrowly-tailored preliminary injunction.  Moreover, both the equities and the public interest weigh in favor of the imposition of such injunctive relief.  Accordingly, G&L's preliminary injunction motion is GRANTED IN PART and the

Defendants are hereby ORDERED to continue complying with all of requirements of the Court's preliminary injunction Order [ECF No. 17].


**So Ordered.**


/s/ Margaret R. Guzman

Hon. Margaret R. Guzman

United States District Judge

10/18/2023